RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0180P (6th Cir.)
File Name: 02a0180p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MARY MOORE HOOVER,
        *Plaintiff-Appellee,*

    *v.*

PROVIDENT LIFE AND
ACCIDENT INSURANCE
COMPANY,
        *Defendant-Appellant.*

No. 00-5796

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 98-00128—Thomas A. Higgins, District Judge.

Argued: September 24, 2001

Decided and Filed: May 21, 2002

Before: MERRITT, SILER and DAUGHTREY, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Katharine R. Cloud, BOWEN, RILEY,
WARNOCK & JACOBSON, Nashville, Tennessee, for
Appellant. John A. Day, BRANHAM & DAY, Brentwood,
Tennessee, for Appellee. **ON BRIEF:** Katharine R. Cloud,

Steven A. Riley, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellant. John A. Day, BRANHAM & DAY, Brentwood, Tennessee, Kathryn E. Barnett, BRANHAM & DAY, Nashville, Tennessee, for Appellee.

———————————

## OPINION

———————————

SILER, Circuit Judge.    Defendant Provident Life and Accident Insurance Company ("Provident") appeals two orders of the district court which reversed Provident's decision to terminate plaintiff Mary Moore Hoover's ("Hoover") residual disability benefits and awarded her attorneys' fees as well as prejudgment interest under the Employee Retirement Income Act ("ERISA"), 29 U.S.C. § 1132(e).  For the reasons stated below, we affirm.

## I

Hoover was a psychologist employed by Maury County Regional Hospital in Columbia, Tennessee.  In 1988 and 1989, Hoover obtained disability insurance policies from Provident.  These policies provided benefits for the insured should she become totally or partially disabled under the terms of the policies.

With respect to "residual disability" benefits, the type of coverage that is at issue in this case, both policies provided benefits to compensate for such a disability if she:

1.    was not able to do one or more of her substantial and material daily business duties or she was not able to do her usual daily business duties for as much time as it would normally take her to do them;
2.    lost 20 percent of her monthly income in her occupation; and
3.    was receiving care by a Physician which is appropriate for the condition causing disability.

We find no error of judgment in the district court's award of attorneys' fees to Hoover. Although the court found no bad faith on the part of Provident, it concluded that Provident's culpability was high. Moreover, as we have previously discussed, the court correctly held that the merits of the case favored Hoover. As to the effect of the award, we do not find that the court clearly erred by holding that such an award would act as a deterrent for Provident and other similarly situated defendants. The court did not abuse its discretion either in its consideration of the factors or in its weighing of the factors to determine that fees should be awarded.

Provident also argues that the award of prejudgment and postjudgment interest was inappropriate. "Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, [this court has] long recognized that the district court may do so at its discretion in accordance with general equitable principles." *Ford*, 154 F.3d at 616 (citations omitted). An award of prejudgment interest serves to compensate the "beneficiary for the lost interest value of money wrongly withheld from him or her." *Id.* at 618. By federal statute, postjudgment interest is allowed on all money judgments. *See* 28 U.S.C. § 1961. The district court did not abuse its discretion by compensating Hoover for the lost interest on the wrongfully withheld funds.

**AFFIRMED.**

After the sixty-day elimination period was satisfied, she was required to satisfy only the first and second elements set forth above and was no longer required to have a loss of duties or time in order to qualify for benefits.

In July 1992, Hoover underwent emergency coronary bypass surgery. As a result of this medical procedure, she submitted a claim for residual disability benefits since she was able to return to her job only on a part-time basis. From 1992 until May 1998, Provident paid Hoover benefits pursuant to the terms of the disability policies for what was determined to be a residually disabling condition of coronary artery disease with stress-induced angina.

During 1993 and 1994, Hoover made multiple visits to her primary cardiologist physician, Dr. Janice M. Vinson. At many of these visits, Hoover complained of intermittent episodes of chest discomfort, which Dr. Vinson attributed mostly to stress rather than physical exertion.

In May 1996, Dr. Vinson again saw Hoover for complaints of chest pain. In her notes concerning Hoover's visit, Dr. Vinson noted that there is "some disease in a septal perforator, and certainly, that is enough to give her some anginal type pain, but unfortunately, with a septal perforator you really can't do anything about [sic] with regard to bypass or angioplasty because of the angle of take-off from its AD." In addition, Dr. Vinson reported:

> Mary Moore has had some increase in her chest pain. At this time, I think medical therapy is really all this is indicated. Her cath showed that her IMA graft was patent, but she still does have some septal disease. It seems that most of her chest pain is stress-related and most of her stress is related to work, and so she has had to cut back quite significantly on that. She is continuing to do everything she can from a standpoint of taking care of herself, most specifically, she has done a good job in trying to continue her exercise program. I think at this time the main thing we are talking about is lifestyle

changes and continuing to be real careful about her cholesterol and exercise program.

In her report dated July 27, 1996, to Provident, Dr. Vinson opined: "Given that the perforator can't really be treated with angioplasty or bypass and she is continuing to have chest discomfort, albeit though it is mostly stress-related, I do consider that she is disabled, and particularly since her job is very stressful, I have recommended that she retire from her counseling profession."

On referral from Dr. Vinson, Hoover sought a second opinion from Dr. Jan Turner in January 1997. Dr. Turner concluded that Hoover continued to suffer from coronary artery disease and "certainly the septal perforator disease would explain the intermittent angina which [Hoover] has."

Hoover was also examined by Dr. Joseph H. Levine, a New York cardiac arrhythmia and pacemaker specialist, in February 1997. Dr. Levine stated in his letter to Dr. Vinson that:

[Hoover] is somewhat concerned that the critical lesion that she has remaining in the septal perforator, and someone told her that this may be associated with heart block if it were to progress further. I have reassured her that there is no large amount of ischemia that is present at this time and, furthermore, that there is no evidence for any type of conduction abnormality noted on exercise stress testing. Thus, exercise stress testing can be used as a assay for conduction abnormality, which in turn may be a function of the critical lesion in this artery. If she continues to pass stress testing without bundle branch block, heart block, etc., we wouldn't really be that concerned that she would develop a high degree of A-V block, with an occlusion of this vessel, a permanent pacemaker could be easily placed and would totally control the situation.

action. *See Maurer*, 212 F.3d at 919. In determining whether to award fees and costs, this court has adopted a five-factor test:

1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions.

*Id.* at 919 (citation omitted). An abuse of discretion exists only when the district court made a clear error of judgment in its conclusion upon weighing the relevant factors. *Id.*

The district court addressed the five factors in its opinion and concluded that four of the five weighed in favor of granting Hoover attorneys' fees and costs. With regard to the first element, the court found that Provident's culpability in this matter was high since its decision was arbitrary and capricious and based largely on the opinions of the doctors in its claim department. As to the second and third element, the court found that Provident had the ability to pay these fees and that the award would provide a deterrent effect for Provident and other similarly situated defendants. Finally, the court found that the fourth element did not favor Hoover's motion but that the last element weighed in her favor since her position had greater merit than Provident's.

Provident argues that the award of attorneys' fees was purely punitive in nature based on the fact that the district court did not make a finding of bad faith and erroneously concluded that the relative merits of the case favored Hoover. Furthermore, Provident asserts that an award of fees in a case such as this would not act as a deterrent to other plan administrators.

accorded no deference or presumption of correctness. *See id.* at 966. The review is limited to the record before the administrator and the court must determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan. *See id.* Reviewing Provident's decision to deny benefits to Hoover under the *de novo* standard, based on the administrative record, it is clear that Provident's decision was incorrect.

Provident concluded that there was no objective evidence of ischemia to support Hoover's work restrictions. Thus, in Provident's view, Hoover's loss of monthly income was due to work restrictions employed as preventative measures and not as a result of her residual disability. Provident relied on the IME performed by Dr. Roseman and the review of Hoover's medical records by Provident's in-house physicians, Drs. O'Connell, Greer, and Blalock. As pointed out by the district court, although Dr. Roseman's assessment did not totally endorse the assessment of Hoover's treating physician, Dr. Vinson, he did not refute it.

The evidence presented in the administrative record did not support the denial of benefits when only Provident's physicians, who had not examined Hoover, disagreed with the treating physicians. Under these circumstances, the district court's decision to reverse Provident's denial of residual benefits to Hoover was correct and it is obvious that no other result was possible had the *de novo* standard of review been utilized.

### III

This court reviews the district court's award of attorneys' fees for an abuse of discretion. *See Maurer v. Joy Techs., Inc.*, 212 F.3d 907, 919 (6th Cir. 2000). Appellate review of awards of prejudgment interest are also subject to the abuse of discretion standard. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998).

Pursuant to 29 U.S.C. § 1132(g), a district court is given broad discretion in awarding attorneys' fees in an ERISA

In October 1997, Hoover was hospitalized for prolonged chest pain. In her report dated November 11, 1997 to Provident, Dr. Vinson stated that

> [Hoover] has a septal perforated which has a 70% lesion and does still have angina from that. Her angina seems to be more frequently induced by stress when she's emotional than by physical exertion. As far as limiting her duties, I have felt that there was direct correlation between her stress at work and the frequency and intensity of her chest pain and so I have asked her to restrict herself based on her symptomatology. . . . Objectively, she does have this lesion on a cardiac cath, which was done approximately two years ago and subjectively certainly her history is compatible with angina, which is incurred when she is under a great deal of stress.

In December 1997, one of Provident's claim representatives asked Dr. William O'Connell, also employed by Provident, to review Hoover's medical records to determine if there was any objective evidence supporting restrictions that would prevent Hoover from performing her occupational duties on a full-time basis. Dr. O'Connell concluded that because of the normal stress test and ejection fraction, there was no reason Hoover could not do her full-time occupation. He suggested Hoover submit to an independent medical exam ("IME").

Hoover submitted to an IME and was examined by Dr. Hal Michael Roseman in February 1998. After reviewing all of Hoover's past medical history and conducting his own examination, Dr. Roseman summarized his findings as follows:

> This 55 year old psychologist is alleging disability on the basis of emotional induced angina. Her professional function does not involve any exertional activity, but involves significant emotional stress.

Certainly, in the medical literature, angina is only [sic] has been reported to be triggered by emotional stress and not by exercise and not be demonstrated with exercise physiologic stress testing. However, Ms. Hoover's situation is quite unusual, especially in light of her successful bypass surgery performed in 1992. Her primary cardiologist has implicated the septal perforator stenosis as a cause for her chest discomfort. I am certainly not able to deny this as a possibility. But given the probable small caliber of her septal perforator, I doubt whether the chest pain source can be legitimately related to this vessel.

There are several historical facts that would argue against ischemia. The prolonged nature of the chest discomfort is quite unusual for coronary ischemia. She reports having chest pain lasting as long as seven hours without amelioration despite treatments with morphine sulphate and IV nitrates. During these chest pain episodes, the records do not indicate any EKG changes, including conduction abnormalities (if the septal perforator was significant enough to cause ischemia, I would suspect that it would be significant enough to cause conduction or ST abnormalities as well). In addition, the patient has experienced tingling paresthesias. Although the symptoms have not been effected by any medication, the patient does report improvement of her symptoms since being on her present psychotropic medications which include Wellbutrin, Prozac and Xanax. The patient's angina is present only with emotional stress. However, it would be unusual to have induced angina at such a disabling magnitude without any demonstrative ischemia. The patient has certainly been evaluated on numerous occasions with numerous modalities without uncovering any provokable ischemia.

Based upon physical examination, the patient's description of her symptoms do not appear to be manufactured. However, the real question still persists

The requirement that the insured submit written proof of loss, without more, does not contain "a clear grant of discretion [to Provident] to determine benefits or interpret the plan." *Perez*, 150 F.3d at 557 (citations omitted). The policies do not expressly state that the administrator has discretion over the determination of residual benefits, nor is there language requiring "satisfactory" proof of a disability. Instead, the policies permit Provident only to require proof to determine financial loss. Even if we were to assume that this language vested discretion in Provident, it would apply only to proof of lost income. The language relied on by Provident in no way equals a grant of discretion in determining whether Hoover suffers from a medical condition rendering her unable to work. Absent such a grant of discretion, Provident's determinations regarding Hoover's residual disability benefits should have been reviewed *de novo*.

Further, we reject the idea that Provident reserved itself discretion by providing that it may require physical examinations at its own expense.[1] The policies do not provide any discretion in the review of these examinations, nor do they require that the results of the examinations provide adequate evidence that the insured is disabled.

Based on the language in these policies, we conclude that determinations regarding Hoover's residual benefits should have been reviewed by the district court *de novo*. Under the circumstances of this case, we find it unnecessary to remand to the district court for this consideration because the necessary result under the *de novo* standard is the same as that reached by the district court. *See Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir. 1990).

When applying a *de novo* standard in the ERISA context, the role of the court reviewing a denial of benefits "is to determine whether the administrator . . . made a correct decision." *Id*. at 967. The administrator's decision is

---

[1] Both policies provide: "[Provident], at our expense, [has] the right to have you examined as often as is reasonable while a claim is pending."

construe plan terms based on the following language: "[The administrator] shall have the right to require as part of the proof of claim satisfactory evidence . . . that [the claimant] has furnished all required proofs of such benefits." *Id.* at 555. The *Perez* court reasoned that the "plan clearly grants discretion to [the administrator] because, under the only reasonable interpretation of the language, [the administrator] retains the authority to determine whether the submitted proof of disability is satisfactory." *Id.* at 557.

The district court held that although the plan did not expressly grant discretion to Provident in determining benefits, the language nevertheless vested discretion in Provident to assess the submitted proof and determine the insured's eligibility for residual benefits. In support of this interpretation, the district court also noted that the plan provided the defendant with the right "to have [the insured] examined as often as is reasonable while a claim is pending."

We disagree and find that the language in the policies do not grant discretion to Provident regarding residual disability determinations. Arguing that the policies contain the requisite clear grant of discretion, Provident points to the following language contained in both policies:

**PROOF OF LOSS**
If the policy provides for periodic payment for a continuing loss, *you must give us written proof of loss . . . .*

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you for disability. Benefits for any loss covered by this policy will be paid as soon as we receive *proper written proof.*

**RESIDUAL DISABILITY/RECOVERY BENEFITS**
*We can require any proof which we consider necessary* to determine your Current Monthly Income and Prior Monthly Income.

whether the symptoms are indeed caused by disabling coronary insufficiency.

* * *

In essence, since the patient's symptoms are emotionally triggered, then the patient would have a difficult time in dealing with emotionally stressful situations. However, as a psychologist, I believe, occupational situations can be present as to minimize those emotional triggers. More importantly is the question of whether the symptoms are cardiac in origin. Coronary artery disease has been invoked as a cause for her symptoms, despite objective tests to the contrary. If it was proven that the patient's symptoms were not cardiac, the patient freely admits that she would feel more secure about her future, especially in light of her father's premature death occurring just four years older than she is.

In March 1998, Dr. Michael Geer, Provident's in-house cardiologist, reviewed Dr. Roseman's IME report and Hoover's medical records. Based on this review, Dr. Geer noted that he agreed with Dr. Roseman's findings and concluded that there was no objective evidence to support Hoover's work restrictions.

Provident informed Hoover in April 1998 that her residual disability claim was being denied based on its review of her medical records and the IME performed by Dr. Roseman. In denying Hoover's claim, Provident noted that there was no objective evidence of ischemia to support her work restrictions and that the loss of monthly income had to be caused by the residual disability for which the claim was made and because Hoover's work restrictions appeared to be preventative measures, her claim was not covered under the policy.

Hoover appealed this decision and submitted additional medical records for Provident's ERISA Appeals Committee to consider. Included in this additional material was a letter from Dr. Vinson stating that she felt she had a "greater

ability" to evaluate Hoover's condition because of her long-term treatment of Hoover, and noted that Dr. Roseman had not disagreed with her diagnosis but recognized in his report that emotional stress could trigger angina that would not appear in physiological testing. Again, Provident had another in-house physician, Dr. William Blalock, review Hoover's medical records and Dr. Roseman's IME report. Based on his review of the case, Dr. Blalock concluded that because there was no objective evidence of ischemia, it was difficult to substantiate Hoover's disability based on emotional stress. On August 20, 1998, Provident notified Hoover that her appeal was denied, stating that there was still no objective evidence supporting her cardiac condition as disabling and explaining that Hoover's policies did not provide benefits for work-related restrictions based on a lifestyle choice.

Hoover then filed suit in Tennessee state court against Provident alleging breach of contract and violation of the Tennessee Consumer Protection Act. Provident removed the case to federal court on the basis of federal question jurisdiction under ERISA.

The district court reversed Provident's decision to terminate Hoover's benefits. The court noted that although Dr. Roseman did not totally endorse Dr. Vinson's assessment, he did not refute it. In addition, Dr. Roseman had suggested further testing, which was never pursued by Provident. It then explained that opinions by treating physicians are to be accorded more weight than non-treating physicians and Provident had failed to present sufficient proof for discounting the opinions of Hoover's treating physicians. The court also noted that Provident was operating under a conflict of interest and that such conflict must be taken into consideration when reviewing this type of benefit determination. Finally, it noted that the administrative record was void as to the credentials, qualifications and specializations of Provident's Drs. O'Connell, Geer and Blalock. Accordingly, it concluded that the denial of benefits was arbitrary and capricious because it was not supported by the evidence in the administrative record. The district court

later awarded Hoover attorneys' fees and prejudgment interest.

## II

Our review of the district court's decision must begin with the issue of whether the court applied the proper legal standard. Provident maintains that the court selected the proper standard but applied a more stringent review than is required under the arbitrary and capricious standard. Hoover counters by arguing that she was entitled to *de novo* review.

We review a district court's determination regarding the proper standard to apply in its review of a plan administrator's decision *de novo*. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).

In *Firestone Tire & Rubber Co. v. Bruch*, 189 U.S. 101, 115 (1989), the Supreme Court stated that an administrator's decision to deny benefits is reviewed under a *de novo* standard unless the plan provides the administrator with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." This does not mean, however, that in order to find such authority the plan must use the term "discretionary" or some other specific terminology. *See Johnson v. Eaton Corp.,* 970 F.2d 1569, 1572 n.2 (6th Cir. 1992). Instead, this circuit has consistently required that a plan contain "a *clear* grant of discretion [to the administrator]." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994).

Based on this court's decision in *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998), and its citation to *Bollenbacher v. Helena Chem. Co.*, 926 F.Supp. 781 (N.D. Ind. 1996), the district court concluded that because the policies required written proof of loss, Provident implicitly was granted the discretion to review that proof and determine whether the insured qualified for disability benefits.

In the *Perez* case, this court concluded that the administrator had discretion to determine eligibility and