*CMLXXXVI
 

 OPINION AND ORDER
 

 SARGUS, District Judge.
 

 This matter is before the Court upon appeal by the Plaintiff Thomas Smith (“Smith”) from the denial by Aetna U.S. Healthcare (“Aetna”) of further long term disability benefits under an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001
 
 et seq.
 
 The Plaintiff has moved for judgment on the merits as to Count One, while the Defendants have moved for summary judgment as to Count One and Count Two. For the reasons that follow, the Court finds that the decision of the Defendant, Aetna, in denying a continuation of disability benefits is erroneous and the Plaintiff is entitled to judgment on the merits as to Count One. Further, the Defendant is entitled summary judgment with regard to the Plaintiffs claims set forth in Count Two in which Smith alleges that Aetna failed to provide requested documentation rendering it subject to sanctions under 29 U.S.C. § 1132(a)(1)(A).
 

 I.
 

 Smith began work for Columbia Gas of Ohio in 1977 and last worked as a senior fitter. In the course of his employment, Smith became a participant in the Group Long Term Disability Insurance Plan (the “Plan”) offered by his employer. The policy entitles a Plan participant to disability benefits “caused by disease or accidental bodily injury.” (Administrative Record (hereinafter “AR”) 12). The policy defines total disability as follows:
 

 You are deemed to be totally disabled while you are not able, solely because of injury or disease, to work at your own occupation, or any reasonable occupation. (This is any gainful activity for which you are, or may reasonably become, fitted by education, training or experience. It does not include work under an approved rehabilitation program.)
 

 Smith graduated from high school in 1970. He thereafter served in the United States Army. He saw combat duty in Vietnam where he was shot in both legs, his arm and neck. Thereafter, he received no other formal vocational or educational training.
 

 Smith worked as a press operator and laborer before his employment with Columbia Gas of Ohio. The work which he performed for Columbia Gas consisted of physical manual labor involved in the assembly, installation and maintenance of pipe systems relating to heating, cooling and processing systems. Because of the manual labor involved in such employment, the duties of a senior fitter are characterized as heavy labor.
 

 On January 13, 1994, Smith filed a claim for benefits under the long term disability insurance plan. (AR 596-608). Two treating physicians provided statements which were submitted with the claim. Dr. Allan Nichols, a cardiologist, diagnosed the Plaintiff as suffering from syncope
 
 [1]
 
 . (AR 601-02). Dr. Nichols also opined that the Plaintiff should be restricted with regard to the operation of heavy equipment and driving. Dr. Judith Held signed a second statement which diagnosed syncope as well as bradycardia.
 
 [2]
 
 (AR 598).
 

 Thereafter, benefits were approved by Aetna with an onset date of disability to be January 7, 1994. In addition, the Social
 
 *CMLXXXVII
 
 Security Administration later awarded Smith disability benefits effective January of 1994. Both the Social Security Administration and Aetna used the same onset date of disability.
 

 Aetna continued to pay benefits through May of 2000, at which time a claims analyst determined that Smith needed to present updated information regarding continuing disability. (AR 506-07). Following the submission by Smith of a form outlining his daily activities, Aetna had the Plaintiffs file reviewed by Dr. Donald Abbott, Aetna’s medical consultant. (AR-450). Dr. Abbott requested medical information from the Plaintiffs treating physician, Dr. Judith Held, who subsequently submitted a series of reports. (AR-67, 299, 362, 448). In addition to the reports of Drs. Abbott and Held, additional medical analysis was obtained from Dr. Bernard Stevens, an Aetna medical consultant and Dr. Allan Nichols, who reported the results of a Tilt report conducted in an electrophysiology laboratory. (AR 67). Aetna also obtained reports from a vocational expert; Smith too submitted a narrative report from a vocational expert.
 

 Aetna initially terminated benefits to the Plaintiff as of February 20, 2001. After Smith filed an appeal, Aetna upheld the original denial of benefits by letter dated September 11, 2001. Thereafter, Smith brought an action pursuant to 29 U.S.C. § 1132 seeking judicial review of Aetna’s termination of long term disability benefits allegedly due him under the terms of an employee welfare benefit plan.
 

 II.
 

 The administrative record begins with Smith’s initial application for long term disability benefits, together with supporting medical documentations. As described above, Dr. Allan Nichols, a cardiologist, diagnosed the Plaintiff as suffering from syncope. On August 6, 1993, Dr. Nichols performed a TILT test during which “the patient developed near syncope, nausea and junctional rhythm at a rate of 57 beats per minute.” (AR 655). Dr. Nichols concluded that “arrhythmia is unlikely to be the obvious etiology of his syncope. It may be that the symptoms are more related to blood pressure changes or some other noncardiovascular etiology.” (AR 650). One month later, Dr. Nichols again examined the Plaintiff and noted that he continued to have symptoms of syncope with all trials. Dr. Nichols concluded that Smith was not able to perform the essential functions of his position with Columbia Gas of Ohio. (AR 611).
 

 One year later, Aetna directed a vocational case manager to review Smith’s file and determine if continuation of benefits was warranted. Sally Patrow interviewed Smith, reviewed his file and reported on October 27,1994 that:
 

 Based on medical reports, it does not appear that Mr. Smith’s episodes of lightheadedness have subsided ... All medical records were obtained by this case manager and forwarded to the account. There has been no change in Mr. Smith’s condition and it appears that he is not work ready at this time. (AR 560).
 

 On March 27, 1996, Dr. Nichols noted that Smith “continues to have intermittent episodes of lightheadedness and dizziness once or twice a week, pretty much unchanged from before.” (AR 112). In addition, on July 23, 1997, Dr. Blake Kellum, a neurologist, reported that Smith “has been having these blackouts now for about the past four years. A typical blackout is proceeded by lightheadedness and dizziness during which time he loses muscle tone and occasionally fails.” (AR 109). Dr. Kellum also noted that such episodes were occurring three to four times per week.
 

 
 *CMLXXXVIII
 
 From Aetna’s initial determination that Smith was entitled to benefits effective January 7, 1994 through May of 2000, the administrative record demonstrates that Smith suffered from syncope and brady-cardia, rendering him totally disabled. Prior to May of 2000, the administrative record contains no medical evidence indicating that Smith’s condition was improving or the syncope-induced spells were subsiding in duration or frequency.
 

 In May of 2000, a claims examiner for Aetna concluded that the file needed additional verification to justify a continuation of disability benefits. Thereafter, Smith completed an “Activities of Daily Living” form in which he first noted that his condition had not improved. (AR 493-94). He noted that he suffered from dizziness and passing out. He also indicated that he was able to perform basic household activities. (AR 493-97). He also noted that he did occasional fishing and reading.
 

 An Aetna representative sent to Dr. Judith Held a request for information. In response, Dr. Held completed a physical capacities evaluation. (AR 457-59). Dr. Held noted that the Plaintiff could stand and walk for one hour and retained the capacity to lift twenty pounds maximum and frequently lift ten pounds. She was also asked to described whether Smith had any limitations in handling, fingering, pushing, pulling or operating foot controls. Dr. Held specifically noted no restrictions but added “unless hit with syncope spells ... then needs to sit or lie down.” She noted the same restrictions with regard to climbing, stooping, kneeling, crouching or crawling. She also noted in a narrative portion of the form that “[t]his individuals
 
 [sic]
 
 syncopal spells have no way of being predicted. When they hit he is completely unable to do anything but sit or lie down until the spell passes.” (AR 458).
 

 The Plaintiffs file was then reviewed by Dr. Donald Abbott, a medical consultant for Aetna. Dr. Abbott wrote a report to the claims examiner acknowledging that Smith’s symptoms “apparently have not been able to come under control.” (AR 450). He sent a letter to Dr. Judith Held, the Plaintiffs attending physician, seeking clarification as to whether Smith could do sedentary work. Dr. Abbott noted that Smith was driving and might otherwise have some additional capability of gainful employment.
 

 Dr. Held responded to Dr. Abbott with a letter dated November 3, 2000. Dr. Held again indicated that Smith continued to have syncopal spells which occurred more frequently in hot weather. She also noted “[t]he reason he has not had any true syncopal episodes lately is because as soon as he feels one coming on he will lay down and be quiet until the ‘feeling’ passes.... I have not seen any of the spells lately, but have witnessed them in the past.” (AR 448). Dr. Held also indicated that “I think he should have vocational training for sedentary work.” (AR 448). She did note, however, that “it is hard to comment on his being employable even after vocational training.” (AR 448).
 

 Thereafter, Aetna sought vocational assessment from Louis P. Szollosy, M.S., CDMS. Szollosy reviewed the October 25, 2000 medical report by Dr. Abbott together with the latter sent on November 3, 2000 by Dr. Held. In the first of five reports, several of which contained different conclusions, Szollosy indicated that the Plaintiff had the residual physical and mental capacity to perform sedentary work. (AR 437-41). On January 29, 2001, Szollosy issued a second report incorporating restrictions set forth by Dr. Held in her letter of November 3, 2000. Szollosy noted in his report Dr. Held’s concern that Smith should not drive, operate machinery or do physical work such as roofing and could only be employable in occupations where he would not be in a position to
 
 *CMLXXXIX
 
 harm himself or others. Szollosy again concluded that the Plaintiff was able to perform sedentary work in a narrow variety of occupations.
 

 After Aetna determined that Smith was no longer entitled to long term disability benefits, Dr. Held wrote an additional letter to the Disability Management Specialist assigned to his case. Dr. Held noted, “ ... given the unpredictable nature of his spells there is no guarantee that he would be able to do an 8 hours 5 day a week job. When these spells hit him, it takes him one to three hours to be able to function in a normal capacity.” (AR 362). She also noted that he could not do any jobs which he had performed in the past. Dr. Held did not dispute the advocacy of vocational training but was unsure if he could learn the necessary skills to perform such jobs as computer programming. In addition, Smith’s counsel submitted with his appeal of the denial of benefits an additional affidavit of Dr. Held. (AR 299-301). Dr. Held avers that Smith is able to recognize the onset of a syncopal episode. To avoid passing out, Smith sits or reclines for one to three hours. She did not see how he could work an entire shift without interruption on a regular basis for the recurring syncopal episodes. She also believed that even with vocational training Smith’s employability was questionable.
 

 Smith also presented in the course of his appeal an employability assessment issued by Craig S. Johnston, MRC, CRC. Johnston assumed that Smith suffered from syncope and that in order to avoid episodes, he is required to lie down for two to three hours approximately one to six times per week. Johnston concluded that given Smith’s sedentary physical capacity, high school education and need for accommodation regarding syncopal spells, he is unemployable with regard to any position for which he is currently qualified. Johnston also noted that Smith has performed only manual labor and vocational testing indicated a fifth grade mathematics proficiency, and only a second grade proficiency in reading and spelling. These considerations prevent him from being reasonably capable of retraining to perform the kind of sedentary work which he might be otherwise physically able to perform. Johnston concluded that Smith meets the definition of total disability as set forth in the long term disability plan.
 

 Thereafter, Mr. Szollosy issued a third report in which he incorporated a number of additional restrictions. This report assumed that Smith suffered from periodic, unpredictable syncopal episodes requiring him to lie down for one to three hours. Szollosy concluded:
 

 [Gjiven that the current medicals reflect that it takes approximately one to three hours for the claimant to recover from his syncopal episodes; given that the recent WRAT testing results further reduced
 
 dose, good, fair and potential
 
 transferable skills and significantly limits the transferable sample; and given the Labor Market Survey does not reflect that the employers would accommodate the claimant for a specific time period (i.e., 1 to 3 hours), it is the opinion of this consultant that until that issue is clarified the claimant remains unemployable. (AR 281-82).
 

 In light of the additional medical documentation and vocational assessment presented by the Plaintiff on appeal, Aetna obtained an additional medical consult from a Dr. Bernard Stevens. Dr. Stevens reviewed the medical records contained in Aetna’s files and reached several conclusions. He first noted that previous cardiac studies did not demonstrate sustained ar-rhythmias. He noted that the scans indicated normal sinus rhythm during the near syncopal attacks. (AR 260). He also noted that laboratory blood testing was normal.
 

 
 *CMXC
 
 More fundamentally, Stevens contends that the file did not document the frequency of syncopal and near syncopal episodes. According to Dr. Stevens, Dr. Held indicated that Smith had not had any true syncopal episodes recently.
 
 [3]
 

 Stevens essentially contended that the file did not document the frequency of syncopal episodes nor the length of time necessary for such episodes to pass. He asserted that the record contained no sustained arrhythmias documented to support a protracted recovery time. Finally, he noted that during the Tilt table test, Smith was able to recover in only a few moments following a
 
 near
 
 onset of an episode.
 

 Stevens also noted that in 1999 the Plaintiff was arrested for driving under the influence of alcohol. According to Stevens, this fact raised a question as to whether Smith is or was a chronic alcoholic. Other than the fact of the arrest, no other documentation of alcohol abuse is found in the administrative record.
 

 After Dr. Stevens report was received, a claims representative wrote to Mr. Szollo-sy and asked him to revise his vocational assessment “based on the restrictions and limitations cited by Dr. Stevens.” (AR 258). In response, Dr. Szollosy issued a fourth report incorporating Dr. Stevens’ view of Smith’s medical condition. Szollo-sy changed his opinion from his third report and concluded that Smith was able to perform sedentary employment and was therefore not disabled under the long term disability plan definition.
 

 Once again, an Aetna claims representative wrote to Szollosy and asked him to revise his report. The three Aetna employees who denied Smith’s appeal agreed that Szollosy should “note reason for changed opinion is due to the lack of objective medical to support the alleged syncope as such claimant should be capable of occs outlined.” (AR 241). In response, Szollo-sy changed his report and noted “... that the ‘syncopal episodes are not medically supported’ so therefore the syncopal issue has become a moot point.” (AR 238).
 

 Finally, on May 30, 2002, Dr. Held submitted an electrophysiology Tilt report from Dr. Allan Nichols. The tests were performed by Dr. Nichols on May 15, 2002. Smith was connected to electrocardio-graphic monitoring. He was then placed in a 70 degree head upright tilt position and injected with isopreterenol. Dr. Nichols concluded that the test showed near syncope and hypotension. Dr. Held included in her cover letter that Smith remained 100% disabled. (AR 67).
 

 In summary, medical opinions were rendered by Drs. Held and Nichols, both of whom examined and treated the Plaintiff. Additional opinions were rendered by Drs. Abbott and Stevens, both consultants for Aetna who never examined Smith. Finally, although the Plan permits Aetna to obtain additional medical information, no actual tests or procedures were requested regarding the frequency and duration of syncopal episodes. From the time Aetna began review of Smith’s continued eligibility until the ultimate denial of his claim, the only test performed regarding syncopal episodes was that performed on May 15, 2002 by Dr. Nichols which revealed a near syncopal episode in the course of a Tilt test.
 

 III.
 

 A. Motion for Entry of Judgment
 

 In Count One, Plaintiff alleges a wrongful denial of disability benefits and seeks
 
 *CMXCI
 
 recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). Under this section of ERISA, a civil action may be brought by a participant or beneficiary “to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan.” 29 U.S.C. § 1132(a)(1)(B).
 

 Plaintiff has moved for judgment on the merits, while the Defendant has moved for summary judgment. In a denial of benefits action brought under Section 1132(a)(1)(B), the district court must base its review of the merits solely upon the underlying administrative record; the district court may not consider any evidence that was not presented to the Plan administrator.
 
 Wilkins v. Baptist Healthcare Sys., Inc.,
 
 150 F.3d 609, 619 (6th Cir.1998) (Gilman, J., concurring).
 
 [4]
 
 The Court of Appeals for the Sixth Circuit has therefore determined that summary judgment procedures are inconsistent with the appropriate standard of review for recovery of benefits claims under ERISA.
 
 Id.
 
 Instead of using the summary judgment mechanism, the Court must review the administrative record applying either a
 
 de novo
 
 or an arbitrary and capricious standard of review, as appropriate, and render a decision on the merits by determining whether the denial of benefits was proper under the terms of the Plan.
 
 Id.
 
 at 619-20;
 
 Wright v. Honda of America,
 
 2002 WL 484633, *4 (S.D.Ohio Feb.12, 2002)(Sargus, J.) Accordingly, this Court will treat both motions as motions for entry of judgment on the merits with respect to the denial of benefits claim set forth in Count One.
 

 13. Standard of Review
 

 A denial of benefits under an ERISA plan that is challenged under 29 U.S.C. § 1132(a)(1)(B) is generally reviewed under a
 
 de novo
 
 standard.
 
 Firestone Tire & Rubber Co. v. Bruch,
 
 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989);
 
 Yeager v. Reliance Standard Life Ins. Co.,
 
 88 F.3d 376, 380 (6th Cir.1996). The deferential arbitrary and capricious standard of review applies, however, if the benefit plan grants “the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.”
 
 Firestone,
 
 489 U.S. at 115, 109 S.Ct. 948. This directive does not mean, however, that the plan must use the term “discretionary” or some other specific terminology. Although the plan need not include “magic words” in order to vest the plan administrator with discretion, the grant of discretionary authority must be “clear” in order to trigger the arbitrary and capricious standard of review.
 
 Hoover v. Provident Life & Acc. Ins. Co.,
 
 290 F.3d 801, 807 (6th Cir.2002);
 
 Perez v. Aetna Life Ins. Co.,
 
 150 F.3d 550, 555 (6th Cir.1998)
 
 (en banc).
 

 The arbitrary and capricious standard “is the least demanding form of judicial review... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.”
 
 Perry v. United Food & Commercial Workers Dist. Unions 405 and 442,
 
 64 F.3d 238, 242 (6th Cir.1995.) Determinations are not arbitrary and capricious if they are “rational in light of the plan’s provisions.”
 
 Miller v. Metropolitan Life Ins. Co.,
 
 925 F.2d 979, 984 (6th Cir.1991).
 

 
 *CMXCII
 
 In contrast, the Sixth Circuit has held that “when applying a
 
 de novo
 
 standard in the ERISA context, the role of the Court reviewing a denial of benefits ‘is to determine whether the administrator ... made a correct decision.’ ”
 
 Hoover,
 
 290 F.3d at 808
 
 (quoting Perry v. Simplicity Eng’g,
 
 900 F.2d 963, 965 (6th Cir.1990)). Further, the decision of the administrator is not accorded a presumption of correctness or deference.
 
 Perry,
 
 900 F.2d at 965.
 

 Whether the benefit plan grants the administrator discretion to determine eligibility for benefits turns upon the language of the Plan itself. In this case, the Plan contains the following language:
 

 A claim must be submitted to Aetna in writing. It must give proof of the nature, occurrence and character and extent of the loss ... the deadline for filing a claim is 90 days after the end of the waiting period. Further, written proof must be given to Aetna at such times as it reasonably requests. (AR 19).
 

 The policy also contains the following language:
 

 A period of total disability starts on the first day you were totally disabled and you must be under the care of a physician. (You will not be deemed under the care of a physician more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the total disability.) Your period of total disability ends on the first to occur of: ... the date you fail to give proof that you are still totally disabled. (AR 13).
 

 While numerous cases have construed various plans in light of
 
 Firestone Tire & Rubber Co. v. Bruch, supra,
 
 two cases from the Sixth Circuit contain ERISA-plan language similar to the language at issue in this case. In
 
 Perez,
 
 the Court held that the plan administrator had sufficient discretion under the language of the Plan to require the application of the arbitrary and capricious standard of review. The precise language of the plan in
 
 Perez
 
 stated:
 

 Written proof of total disability must be furnished to [Aetna] within ninety days after the expiration of the [first twelve months of disability]. Subsequent written proof of the continuance of such disability must be furnished to [Aetna] at such intervals as, [Aetna] may reasonably require ...
 
 [Aetna] shall have the right to require as part of the proofs of claim satisfactory evidence ... that [the claimant] has furnished all required proof for such benefits ...
 

 150 F.3d at 555 (emphasis in original).
 

 The court held that such language permitted Aetna to request and receive satisfactory evidence before a plan participant was entitled to total disability benefits. Specifically, the court held that “the right to receive as part of the proof of claim satisfactory evidence” was a grant of discretion to Aetna for it to determine whether the participant had submitted satisfactory proof of total disability. The court concluded that “... the only reasonable interpretation of the Plan is that Aetna requests the evidence, reviews it, and then makes a benefits determination.”
 
 Id.
 
 at 556.
 

 In
 
 Hoover,
 
 the Sixth Circuit reviewed different plan language and found that the plan administrator had not been given a grant of discretion sufficient to warrant the application of the arbitrary and capricious standard. The language contained in
 
 Hoover
 
 stated:
 

 PROOF OF LOSS
 

 If the policy provides for a period payment for a continuing loss,
 
 you must give us written proof of loss ...
 

 TIME OF PAYMENT OF CLAIMS
 

 After we receive written proof of loss, we will pay monthly all benefits then due you for disability. Benefits for any loss covered by this policy will be paid
 
 *CMXCIII
 
 as soon as we receive
 
 proper written proof.
 

 RESIDUAL DISABILITY/RECOVERY BENEFITS
 

 We can require any proof which we consider necessary
 
 to determine your Current Monthly Income and Prior Monthly Income.
 

 290 F.3d at 808 (emphasis in original).
 

 The court of appeals concluded that such language did not contain a clear grant of discretion to Aetna. The court held:
 

 The policies do not expressly state that the administrator has discretion over the determination of residual benefits, nor is there language requiring “satisfactory” proof of a disability. Instead, the policies permit Provident only to require proof to determine financial loss. Even if we were to assume that this language vested discretion in Provident, it would only apply to proof of lost income.
 
 The language relied on by Provident in no ivay equals a grant of discretion in determining whether Hoover suffers from a medical condition rendering her unable to work
 
 Absent such a grant of discretion, Provident’s determinations regarding Hoover’s residual disability benefits should have been reviewed
 
 de novo.
 

 Id.
 
 (emphasis added).
 

 As to the issue of discretion, the language contained in the Plan at issue in this case is indistinguishable from language used in
 
 Hoover.
 
 For example, in
 
 Hoover
 
 the plan provided that “you must give us written proof of loss.” In this case, the Plan requires that, “A claim must be submitted to Aetna in writing. It must give proof of the nature, occurrence and character and extent of the loss.” Neither Plan states that a participant must provide satisfactory proof of a disability, nor does the Plan at issue here contain any express language conferring on the administrator a grant of discretion. While there are no talismanic. words required to invoke the arbitrary and capricious standard, a plan must nonetheless contain language granting to the administrator sufficient discretion to determine the merits of the claim for benefits. In this case, the Plan requires the participant to give proof of disability, but otherwise contains no language to the effect that the Plan administrator will then exercise discretion or otherwise require satisfactory evidence before benefits are payable.
 

 Based upon the foregoing, the Court concludes that the
 
 de novo
 
 review is applicable to the determination made by the administrator in this case.
 

 IY.
 

 The record in this case contains a substantial amount of medical and vocational evidence upon which the decision to terminate benefits was granted. Nevertheless, within the numerous medical and vocational reports contained in the administrative record, several narrow issues predominate in determining whether the Plaintiff is entitled to disability benefits by the terms of the Plan.
 

 To a great extent, whether the Plaintiff is entitled to disability benefits turns on whether he has recurring, but unpredictable syncopal episodes which require him to lie down for one to three hours. On this issue there is conflicting medical opinion. In order to focus the analysis, however, the Court first notes that the two vocational experts of record in this case agree that, if the Plaintiff suffers from syncopal episodes of the frequency and duration described by Dr. Held, he is essentially unemployable and therefore eligible for disability benefits.
 
 [5]
 
 Consequently,
 
 *CMXCIV
 
 any dispute as to the conclusions reached by the vocational experts is based upon conflicting conclusions drawn by the physicians of record in this case. If the conclusion is reached that the syncopal episodes are in fact regular and recurring and require one to three hours of recovery, both vocational experts agree that the Plaintiff is entitled to long term disability benefits.
 

 Whether in fact such episodes occur on a regular basis and require a one to three hour recovery time is a question that has divided the physicians who have issued opinions in this case. During Aetna’s initial review of Smith’s application for benefits in 1993, medical evidence was presented in the form of reports from Dr. Nichols, a cardiologist, and Dr. Kellum, a neurologist. Both doctors confirmed the presence of syncopal episodes. Dr. Nichols performed a Tilt test which evidenced near syncope. Dr. Kellum later described a four year history of blackouts with episodes then occurring three to four times per week.
 

 Dr. Judith Held, claimant’s treating physician, described in her report of November 3, 2000 “the unpredictable nature of the syncopal spells.” While she did not indicate the duration of such spells in her first report, she noted in a letter dated March 5, 2001 that the spells were unpredictable and required one to three hours of recovery. In her subsequent affidavit dated May 4, 2001, she again indicated that periodic, unpredictable syncopal episodes afflicted Smith.
 

 Finally, after Smith’s claim was denied, Dr. Nichols performed a Tilt test on May 15, 2002 which again revealed near syncope and provided objective verification of the condition. In summary, all of Smith’s treating physicians have verified that he suffers from syncopal episodes. Dr. Held specifically addressed in several reports the need for a one to three hour recovery from such, occurrences.
 

 Aetna relies upon the reports of two medical consultants, neither of whom examined the Plaintiff, nor requested additional testing. Dr. Abbott noted that Smith could drive a car, engage in fishing, and attend to household chores. Nonetheless, Dr. Abbott provided no basis upon which to refute the opinion of Smith’s treating physician that such episodes were recurring and required a long period of recovery.
 

 Aetna also relied upon the consulting opinion of Dr. Bernard Stevens, who again did not examine the claimant nor request additional medical testing. The Court first notes that Dr. Stevens made specific reference to the fact that the Plaintiff was arrested for driving under the influence of alcohol in 1999. According to Dr. Stevens, without any additional documentation, “[t]his information raises the question as to whether or not this individual is/was a chronic alcoholic, as some of his so called episodes might be attributed to alcohol usage.” (AR 260). Later in the same report, Dr. Stevens notes that the question of alcohol abuse “was quite material to this case.” (AR 261). Despite the fact that Aetna has the right under the Plan to seek additional information or testing, no action was taken to corroborate what is otherwise speculation on the part of Dr. Stevens.
 

 Dr. Stevens raised three issues in support of his contention that Dr. Held’s con-
 
 *CMXCV
 
 elusions as to the frequency and duration of syncopal episodes were unsupported. First, he contended that the spells were not ictal episodes, which are known to have post-ictal disorientation and lethargy. Second, he contended that there were no sustained arrhythmias ever documented to support a protracted recovery time. Third, he noted that during the Tilt test Smith was able to recover in minutes and not hours.
 

 Each one of these conclusions, taken in isolation, is not supported by the medical evidence of record. As to Dr. Stevens first contention that the spells were not ictal episodes known to have associated disorientation and lethargy, he provides no medical test results, studies, treatises, or other corroboration of his implicit claim that only ictal episodes require a long recovery time. The record is not in dispute that Smith’s episodes are not, and have not been, ictal in nature. At the time benefits were first awarded, Dr. Nichols agreed that the spells were not ictal in nature, but rather related to blood pressure changes and a slow heart rate. The fact that the spells were not ictal does not,
 
 ipso facto,
 
 refute Dr. Held’s opinion that a prolonged period of recovery is necessary. Dr. Stevens simply does not address why non-ictal syncope is not just as disabling and neither the Plan nor this Court should speculate as to his reasoning.
 

 Second, Dr. Stevens’ contention that the syncopal episodes did not involve sustained arrhythmia does not aid in determining the nature and extent of the episodes. Dr. Nichols has also agreed that the episodes were not accompanied by arrhythmia, but still were recurring and severe. It was upon Dr. Nichol’s similar opinion in 1993 that disability benefits were awarded. Dr. Nichols indicated that arrhythmia is unlikely to be the obvious etiology of a syncope and instead thought it was “more related to blood pressure changes.” (AR 650). In other words, over the ten year period of this claim, no treating physician ever looked to evidence of arrhythmia to validate Smith’s claims that such recovery time was necessary.
 

 Finally, Stevens contends that Smith was able to recover in minutes, rather than hours, following the inducement of a near syncopal episode on a Tilt test performed in 1993. Initially, the Court notes that Dr. Stevens’ opinion in this regard essentially contradicts the original award of benefits which occurred in 1994, based in part on a Tilt test in 1993. More fundamentally, Dr. Nichols noted in both the 1993 and 2002 Tilt reports that Smith was only
 
 near
 
 syncope, and not in an actual syncopal episode. The Tilt test was stopped after the symptoms of a syncopal episode began. Again, Dr. Stevens presents no reference to objective test results, medical treatises, or other information upon which to evaluate his otherwise conclusory statement that Smith could recover in minutes and not hours during a Tilt test. Further, Dr. Stevens again directly contradicts the opinion of a treating physician, Dr. Held.
 

 In summary, Dr. Held and Dr. Nichols have treated Mr. Smith for over a decade. Both have described his longstanding problem with syncopal episodes. The episodes are documented by Tilt test results which reveal the presence of the condition. Since January of 1994, Aetna has agreed with such conclusions and has paid benefits to the Plaintiff. Further, the Social Security Administration determined that Smith was entitled to disability benefits from the same date and continues to pay such payments due him based upon total disability.
 

 Notwithstanding such evidence, Aetna has now concluded that the syncopal episodes do not prevent Smith from gainful employment. This conclusion is in contrast to all of the treating physicians who have issued opinions of record. The two
 
 *CMXCVI
 
 nonexamining physicians who reviewed this case at Aetna’s request have pointed to no objective test results or other medical documentation which would refute the conclusions reached by Dr. Held and Dr. Nichols. While this Court is not bound to accept an undocumented conclusion of a treating physician, it may also place little weight upon a conclusory opinion rendered by a non-examining physician who offers no medical evidence, or other justification while contradicting the medically supported conclusions of two treating physicians. Moreover, the most recent Tilt report, which neither Dr. Stevens nor Dr. Abbott reviewed, shows that Smith suffers from syncope. No evidence has been presented to demonstrate any significant change in condition which would warrant a termination of benefits.
 

 Based upon the foregoing, the Court concludes that the Defendant Plan Administrator wrongfully terminated long term benefits payable to Smith by the terms of the Plan.
 

 V.
 

 Defendants also seek summary judgment under Rule 56 as to Count Two of the Complaint. Plaintiff alleges that Aetna, as Plan administrator, failed to provide him in a timely fashion certain copies of the administrative record. He brings this claim under 29 U.S.C. § 1132(c)(1) which starts in part:
 

 Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request
 
 may
 
 in the court’s discretion be personally ha-ble to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 

 Id.
 
 (emphasis added).
 

 It is undisputed that the records that Plaintiff claims should have been given him involved portions of the administrative record. In his Motion for Judgment on the Merits,
 
 [6]
 
 Plaintiff contends that Aetna refused to timely tender (a) a labor market survey; (b) a copy of the entire administrative record; and (c) in response to a discovery request in this case, a copy of the administrative record.
 

 The material facts pertinent to this claim are not in dispute. The Court finds that the Defendants have in fact supplied to Smith virtually all of the requested documents, other than what was apparently a minor omission involving the labor market survey, a document of minimal importance to the issues in this case.
 

 In the discretion afforded under § 1132(c), the Court finds no bad faith, or other conduct sufficient to justify an award of statutory damages. The Court, finding no genuine issue of material fact, grants summary judgment in favor of the Defendants as to Count Two.
 

 YI.
 

 Based upon the foregoing, the Plaintiff is GRANTED judgment as to Count One. Aetna shall reinstate disability benefits consistent with this Order. The Defendants are GRANTED summary judgment with respect to Count Two.
 

 IT IS SO ORDERED.
 

 [1]
 

 . “Syncope” is defined as "a temporary suspension of consciousness due to generalized cerebral ischemia.”
 
 Borland's Illustrated Medical Dictionary
 
 (30th ed.2003).
 

 [2]
 

 . “Bradycardia” is defined as "slowness of the heartbeat, as evidenced by slowing of the pulse rate to less than 60 [per minute].”
 
 Dor-land’s Illustrated Medical Dictionary
 
 (30th ed.2003).
 

 [3]
 

 . Actually, Dr. Held said
 
 she
 
 had not seen any spells lately. She did not state that Smith was not having spells outside of her office.
 

 [4]
 

 . The decision was a split one. The three-judge panel agreed on all other issues decided in the case, which issues were discussed in an opinion delivered by Judge Cole. Judge Gil-man, however, issued a separate opinion, in which Judge Ryan concurred, which constitutes the majority opinion on the summary judgment issue.
 

 [5]
 

 . In his single report. Craig Johnston concluded that the Plaintiff is totally disabled from any occupation for which he is reason
 
 *CMXCIV
 
 ably able to perform, based in large part upon the syncopal episodes. As the medical evidence developed in this case, the second vocational expert, Louis Szollosy, changed his opinion based upon additional medical evidence forwarded to him over a period of time. Nonetheless, it is clear from the various reports issued by him, that in his opinion the claimant would be unemployable if he required one to three hours for recovery time following a syncopal episode. See Report of July 2, 2001, p. 4, 5.
 

 [6]
 

 . Unlike the analysis as to Count One, Count Two is analyzed under Rule 56.