Byron C. PFLAUM, II, D.O., Plaintiff,

v.

**UNUM PROVIDENT CORPORATION,**
Defendant.

No. CIV.03–73131.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 23, 2004.

David B. Grant, Grant & Busch, Southfield, MI, for Plaintiff.

K. Scott Hamilton, Dickinson Wright, Detroit, MI, for Defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff brings an action against Defendant to recover disability income insurance benefits under three policies. Defendant made a motion to affirm the ERISA benefits determination made by its plan administrator. Plaintiff opposes this motion and made his own motion to declare void the plan administrator's denial and to order reinstatement of Plaintiff's insurance benefits. For the reasons below, I GRANT Defendant's motion to affirm the ERISA benefits determination; and DENY Plaintiff's motion to declare void the plan administrator's denial and to order reinstatement of benefits.

## I. FACTUAL BACKGROUND

Plaintiff, Dr. Byron C. Pflaum, D.O., brings an action against Defendant, UNUM Provident Corp. ("UNUM Provident"), to recover disability income insurance benefits under three policies. (Def.

Mot. to Affirm ERISA Benefits Determination at 1). Plaintiff's employer established and maintained the policies. *Id.*

The Paul Revere Life Insurance Company ("Paul Revere") insured Plaintiff under three policies.[1] *Id.* at 2. Two of the policies insured Plaintiff in the event he was Totally Disabled or Residually Disabled from his occupation. *Id.* Plaintiff's employer was the sole beneficiary of the third policy; under the third policy Plaintiff received no benefits.[2] *Id.* at Exhibit 4 at 1, 14 at ¶ 8.6, Application at 1.

On March 7, 2001, Plaintiff notified Defendant that on February 22, 2001, he had suffered a mild heart attack. *Id.* at 3 *citing* (Admin. Rec. at 5). Plaintiff submitted a claim for insurance benefits asserting that he was disabled from February 23, 2001, to March 12, 2001, and Residually Disabled from March 13, 2001 onwards. *Id.* at 3 *citing* (Admin. Rec. at 9). On March 18, 2001, Paul Revere informed Plaintiff that his first benefit would begin on June 22, 2001, and requested certain medical and financial documents. *Id.* at 3 *citing* (Admin. Rec. at 21–23).

Plaintiff sent Paul Revere documents it had requested to review Plaintiff's claim. *Id.* at 3, 4 *citing* (Admin. Rec. at 189). Paul Revere paid Plaintiff on the two policies for the period from May 23, 2001, to August 1, 2001, yet requested additional documents. *Id.* at 4 *citing* (Admin. Rec. at 191–2).

On July 24, 2001, Plaintiff's doctor sent a cardiolite stress test to Paul Revere which revealed no problems. *Id.* at 4 *citing* (Admin. Rec. at 212).

On September 28, 2001, Paul Revere paid benefits to Plaintiff under the two policies through September 1, 2001, and Paul Revere requested Plaintiff submit more financial information. *Id.* at 4 *citing* (Admin. Rec. at 213–4).

Plaintiff's medical records were then reviewed by a cardiologist, Dr. Starobin. On October 12, 2001, he reported, "The restrictions and limitations claimed by the insured and his personal physician do not seem to be supported by the medical records." *Id.* at 5 *citing* (Admin. Rec. at 228).

On October 31, 2001, Paul Revere wrote to Plaintiff stating that it had concluded Plaintiff was not Totally Disabled. *Id.* at 5 *citing* (Admin. Rec. at 236–9). However, Paul Revere paid Plaintiff and his employer under all three Policies through September 1, 2001. *Id.* at 5 *citing* (Admin. Rec. at 227). On December 18, 2001, Plaintiff called Paul Revere asking how to appeal this decision and how to submit a claim for Residual Disability. *Id.* at 6 *citing* (Admin. Rec. at 240–1).

Over the next three months Plaintiff and Defendant communicated about the medical and financial records that Defendant needed to process Plaintiff's appeal and claim for Residual Disability. *Id.* at 6, 7 *citing* (Admin. Rec. at 268–71, 331, 355–7, 374, 395, 445–7). Among other documents, Plaintiff submitted to Paul Revere an Attending Physician's Statement ("APS") from Plaintiff's doctor, Dr. DeLara. *Id.* at 7 .*citing* (Admin. Rec. at 445–7). This APS gave the opinion that Plaintiff had "No Limitations or Restrictions" on his ability to return full time to his occupation as an orthopedic surgeon. *Id.*

---

**1.** UNUM Provident Corporation purchased the assets of the Paul Revere Insurance Company. (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 1).

**2.** Plaintiff's employer has not sued Defendant under this policy. *Id.* at 3 fn. 2.

On April 4, 2002, Paul Revere submitted all of Plaintiff's updated medical information to Dr. Starobin for a second review. *Id.* at 8, 9 *citing* (Admin. Rec. at 455). Dr. Starobin concluded that Plaintiff has no significant impairment. *Id.* Therefore, on April 13, 2002, Paul Revere wrote to Plaintiff denying his claim for Residual Disability benefits. *Id.* at 9 *citing* (Admin. Rec. at 457–8).

On April 25, 2002, Paul Revere responded to Plaintiff's request that his claim be considered under the "Recovery Benefit" provision of the policies. *Id.* at 9 *citing* (Admin. Rec. at 462). Paul Revere and Plaintiff communicated about the documentation that Plaintiff would need to submit to Paul Revere to review Plaintiff's claim. *Id.* at 9 *citing* (Admin. Rec. at 465–8, 470–1, 473, 531–5, 537). Plaintiff claims that UNUM Provident concluded that additional benefits were warranted under the Recovery provision of the policies. (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 6). On September 27, 2002, Paul Revere sent Plaintiff benefit checks, but requested further documentation to consider his benefits. (Def. Mot. to Affirm ERISA Benefits Determination at 10 *citing* (Admin. Rec. at 544)).

On November 15, 2002, Paul Revere, after reviewing the most recent financial data questioned why Plaintiff was claiming a loss of income even though he had been back working full time in his occupation for over one year. *Id.* at 10 *citing* (Admin. Rec. at 555). Paul Revere specifically requested Plaintiff send copies of his appointment books and CPT codes to Paul Revere, so that it could determine if Plaintiff was consistently seeing patients. *Id.*

Paul Revere's internal documents (dated April 11, 2003) demonstrate that the company waited for these documents to properly review his claim, however, Plaintiff never sent the documents to Paul Revere. *Id.* at Exhibit 1, Admin. Rec. at 569.

On July 2, 2003, Paul Revere wrote to Plaintiff noting that, based upon the opinion of Plaintiff's own physician, he was able to return to work without restrictions and that he was not entitled to any disability benefits, since the economic loss was not a result of the continuation of an injury or sickness. *Id.* at 10 *citing* (Admin. Rec. at 571–5). Paul Revere also explained that Plaintiff failed to supply the additional requested information necessary to determine whether his loss of income was the result of a disability. *Id.* at 11 *citing* (Admin. Rec. at 573). Paul Revere invited Plaintiff to provide the company with additional information, however, according to Defendant, Plaintiff did not provide the requested documentation. *Id.* at 11 *citing* (Admin. Rec. at 574).

## II. ANALYSIS

### A. ERISA Benefits Action

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* governs employee welfare benefit plans. Plaintiff's insurance policies were established and maintained by Plaintiff's employer, therefore they are employee welfare plans covered by ERISA. (Def. Mot. to Affirm ERISA Benefits Determination at 1).

The Sixth Circuit has set out procedural guidelines to resolve ERISA governed benefits actions in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609 (6th Cir.1998). The guidelines require that a court determine the applicable standard of review based upon the policy language (either arbitrary and capricious, or de novo); and (2) determine, based only upon the material in the Administrative Record whether Defendant's administrative decision should be affirmed under the applicable standard. *Id.* at 613, 615.

## B. Standard of Review

A court should apply a de novo standard when reviewing a denial of benefits claim, "unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where a plan "expressly grants the [plan] administrator discretionary authority to determine eligibility for benefits" a court shall "review the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious standard of review.'" *Killian v. Healthsource Provident Administrators Inc.*, 152 F.3d 514, 520 (6th Cir.1998); *citing Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996).

### 1. Deferential Standard

In applying the highly deferential arbitrary and capricious standard of review a court should consider whether the plan is operating under a conflict of interest and shape the standard of review accordingly. *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1069 (6th Cir.1998). If there is a conflict of interest affecting the plan's operation, the court should weigh the conflict of interest as a factor in determining if there is an abuse of discretion. *Firestone Tire*, 489 U.S. at 115, 109 S.Ct. 948.

A court determining whether a plan grants discretionary authority to an administrator should focus on the extent of the plan administrator's power. *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801 (6th Cir.2002). There are no magic words that grant discretionary authority rather the plan must clearly grant the plan administrator discretionary authority. *Id.*

The plan at issue grants its plan administrator discretionary authority, therefore, this Court should provide a "highly deferential arbitrary and capricious standard of review" to the administrator's decision. *Killian* 152 F.3d at 520. Both Plaintiff and Defendant cite a passage in the policy that grants the plan administrator discretionary authority. (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 8); (Def. Br. in Supp. of Mot. to Aff. ERISA Benefits Determination at Exhibits 2 and 3 at 16 ¶ 9.6). The quoted policy section reads:

9.6 TIME OF PAYMENT OF CLAIMS

After we receive satisfactory written proof of loss:

a. We will pay any benefits then due that are not payable periodically; and

b. We will pay at the end of each 30 days any benefits due that are payable periodically—subject to continuing proof of loss.

(Def. Br. in Supp. of Mot. to Aff. ERISA Benefits Determination at Exhibits 2 and 3 at 16 ¶ 9.6). This passage demonstrates that the plan clearly grants discretionary authority to the plan administrator. The phrase "After we receive satisfactory written proof of loss...." is evidence that discretion is vested in the administrator. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir.1998) (An insurance policy vests discretion by requiring the insured to submit "satisfactory" evidence of disability); *see also Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996) (A phrase in a plan requiring "satisfactory proof of total disability" is evidence that the plan granted discretion to the administrator).

Plaintiff also agrees that the section above grants the plan's administrator discretionary authority. "[T]he language of the policy grants UNUM Provident limited discretionary authority to determine eligi-

bility for benefits or to construe the terms of the plan." (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 7).

Therefore, this Court applies an arbitrary and capricious standard of review when reviewing this denial of benefits claim, because the policy grants full discretion to the plan administrator.

### 2. Conflict of Interest

The Supreme Court in *Firestone Tire*, requires courts to weigh any conflict of interest as a factor in determining if a decision to deny benefits was arbitrary or capricious. 489 U.S. at 115, 109 S.Ct. 948. I do not believe that Defendant had a conflict of interest in denying Plaintiff's claim, therefore, I do not engage in the *Firestone Tire* analysis.

Plaintiff claims that "since UNUMProvident both funds and administers the plan, it incurs a direct expense as a result of the allowance of benefits, and it benefits directly from the denial or discontinuation of benefits." (Reply Br. to Def.'s Mot. to Affirm ERISA Benefits Determination at 2).

▇ I believe that Defendant was not motivated by a conflict of interest, because there is nothing in the administrative record to suggest that Defendant was influenced by its financial interest in denying benefits. "There must be some evidence in the administrative record to suggest that Defendants' decision was motivated or influenced by its financial interest in minimizing Plan payments...." *Monks v. Keystone Powdered Metal Co.,* 78 F.Supp.2d 647, 664 (E.D.Mich.2000). Defendant's financial stake in benefit determinations alone is not sufficient to suggest a conflict of interest. *Id.*

Plaintiff claims there was a conflict interest because (1) the medical expert was employed by UNUM Provident; (2) Dr.

Starobin's note, in Plaintiff's opinion, reveals that Plaintiff was not capable of full time work; and (3) the plan administrator states that Plaintiff has a loss of income of forty-three per cent, but, according to Plaintiff, discounted other additional factors. (Pl. Reply Br. to Def. Mot. to Affirm ERISA Benefits Determination at 2). However, Plaintiff does not point to evidence in the Administrative Record that suggests Defendant was motivated by a financial interest in denying benefits.

#### (i). Medical Expert Independence

▇ Plaintiff claims that Defendant's reliance on the medical expert created a conflict of interest, because the physician, by virtue of being employed by UNUM Provident, had an incentive to maintain that there is no disability. (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 9, 10). Plaintiff's facts are not helpful because he does not demonstrate a conflict of interest in the Administrative Record. Defendant's use of Dr. Starobin to perform an independent medical examination supports a finding that there is no conflict of interest. *See Laser v. Provident Life and Acc. Ins. Co.,* 211 F.Supp.2d 645, 650 (D.Md.2002). Additionally, Defendant's medical consultants relied on Plaintiff's doctor's findings for at least some of the consultants' conclusions. (Def. Br. in Resp. to Pl.'s Mot. to Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 3).

#### (ii). Medical Expert's Note

Plaintiff claims that Dr. Starobin's note reveals Plaintiff was not capable of full time work, yet this allegation is not supported with evidence from the Administrative Record. (Pl. Reply Br. to Def. Mot. to Affirm ERISA Benefits Determination at

3). The doctor's note in the Administrative Record actually states that he does not know whether Plaintiff would be impaired in lifting, pulling or straining. (Def. Br. in Supp. of its Mot. to Affirm ERISA Benefits Determination at Exhibit 1 at Admin. Rec. at 228). Thus, Plaintiff does not establish a conflict of interest apparent in Dr. Starobin's note.

### (iii). Defendant's Failure to Consider All Economic Loss Factors

Lastly, Plaintiff claims that Defendant failed to consider all the factors in calculating Plaintiff's economic loss. (Pl. Reply Br. to Def. Mot. to Affirm ERISA Benefits Determination at 3). "The claims representative conceded as late as November 2002 that Pflaum had a loss of income of forty-three (43%) per cent, but discounted any additional factors." *Id. citing* (Admin. Rec. at 555).

Plaintiff's evidentiary support does not create any inference of a conflict of interest. *Id.* Plaintiff cites Defendant's letter (dated November 15, 2002) to show that the a disability caused Plaintiff's economic losses. (Admin. Rec. at 555). Plaintiff points only to a sentence in the letter, which in context does not support Plaintiff's claim of a conflict of interest. *Id.* The letter, when read in its entirety, establishes that Defendant requested that Plaintiff produce more information, specifically CPT codes and appointment books, to determine the cause of Plaintiff's losses. *Id.* Therefore, Plaintiff fails to establish that a conflict of interest influenced Defendant's claims representative's decision.

### C. Arbitrary or Capricious Decision

I now analyze whether Defendant arbitrarily or capriciously denied benefits to Plaintiff. The Sixth Circuit stated that a court applying this standard "must decide whether the plan administrator's decision was rational in light of the plan's provisions." *Williams v. International Paper*

*Co.*, 227 F.3d 706, 712 (6th Cir.2000). This standard requires the "least demanding form of judicial review of administrative action." *Id.* In my opinion, Defendant's decision was supported by the evidence in the administrative record and was rational in light of plan's provisions.

The policies provided "total" and "residual" disability benefits. (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at Exhibit 1 and 2 at 6 § 1.10, 7 § 1.11). Additionally, both policies provide for a "recovery benefit." *Id.* at Exhibit 1 and 2 at 10 § 2.30. Below I analyze Defendant's decision to deny each of these benefits, and find that Defendant's denial in each case was not arbitrary or capricious.

### 1. Total Disability Benefits Denial

■ The policy gives special meaning to the term "Total Disability":

1.10 **"Total Disability"** means that because of Injury or Sickness:

a. You are unable to perform the important duties of Your Occupation; and

b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

*Id.* at Exhibit 1 and 2 at 6 § 1.10. Insured individuals are entitled to receive benefits under the policy beginning on the commencement date, "1.14 **"Commencement Date"** is the day shown on the Policy Schedule when benefits begin during a Disability." *Id.* at Exhibit 1 and 2 at 7 § 1.14. Plaintiff's commencement date began on the ninety-first day after an injury or sickness. *Id.* at Exhibit 1 and 2 at Policy Schedule.

Plaintiff did not qualify for Total Disability because his disability did not extend

past the Commencement Date. Plaintiff claimed to be unable to work from February 23, 2001, and returned to his job on March 12, 2001. (Def. Mot. to Affirm ERISA Benefits Determination at 17 *citing* (Admin. Rec. at 9)). Because Plaintiff did not sustain a disability for over ninety days, he was not qualified to receive Total Disability benefits.

Additionally, Defendant, rationally, denied benefits to Plaintiff based upon the findings of its medical consultant. *Id.* at 17 *citing* (Admin. Rec. at 236-7). This medical consultant reviewed the findings of Plaintiff's physician. *Id.* at 8. Plaintiff's physician stated that Plaintiff could return to work without any restrictions or limitations. *Id.* at 17 *citing* (Admin. Rec. at 447). Defendant's medical consultant could rationally conclude, based on Plaintiff's physician's conclusions, that Plaintiff was not impaired. Therefore, Defendant's denial of Total Disability benefits to Plaintiff was not arbitrary or capricious.

## 2. Residual Disability Benefits Denial

The policy gives special meaning to the term **"Residual Disability"**:

1.11 **"Residual Disability"** means that because of Injury or Sickness:

  a. You incur a Loss of Earnings while you are engaged in Your Occupation or another occupation; and

  b. You are receiving Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further care would be of no benefit to You; and

  c. You are not Totally Disabled.

  Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any. This period is shown on the Policy Schedule.

*Id.* at Exhibit 1 and 2 at 6 § 1.11.

Plaintiff did not qualify for Total Disability because his disability did not extend past the Commencement Date. Because there is no Total Disability there can be no Residual Disability, because Residual Disability must follow a period of Total Disability. *Id.* Additionally, as stated above, Defendant, rationally, denied benefits to Plaintiff based upon the findings of its medical consultant. *Id.* at 17 *citing* (Admin. Rec. at 236-7). Therefore, Defendant's denial of Residual Disability benefits to Plaintiff was not arbitrary or capricious.

## 3. Recovery Benefits Denial

The policy gives special meaning to the term "Recovery Benefits":

1.12 **"Recovery"** means a period which begins prior to age 65 during which:

  a. You incur a Loss of Earnings which follow Total or Residual Disability which continued at least to the Commencement Date;

  b. The Loss of Earnings is due to the prior Injury or Sickness which caused the Total or Residual Disability; and

  c. You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

*Id.* at Exhibit 1 and 2 at 7 § 1.12.

Defendant paid Plaintiff a Recovery Benefit through September, 2002, when Defendant began to question the propriety of the payments. (Def. Mot. to Affirm ERISA Benefits Determination at 18 *citing* (Admin. Rec. at 544)). Defendant believed the payments, for an earnings loss due to a prior injury or sickness, to be improper because Plaintiff had, at that point, been working full time for over a year and Plaintiff's physician stated that there were no restrictions on Plaintiff's ability to practice. *Id.* at 18. Defendant requested Plaintiff produce his CPT codes and appointment books to determine if

Plaintiff was seeing patients consistently and if a prior injury or sickness caused his earnings loss. *Id.* at 18 *citing* (Admin. Rec. at 555). Plaintiff did not comply with this request. *Id.*

Plaintiff failed to send the appointment books to Defendant and only sent some of the CPT codes, therefore, Defendant could not determine whether Plaintiff was entitled to Recovery Benefits. *Id.* Plaintiff claims that he did not fail to provide requested information, however, Plaintiff does not demonstrate that he provided the appointment books. (Pl. Mem. in Supp. of Mot. To Declare Void the Claims Representative's Denial and to Order Reinstatement of Benefits at 11). Under the policy only Defendant can determine when the requirements for Plaintiff to receive benefits have been fulfilled. (Def. Br. in Supp. of Mot. to Aff. ERISA Benefits Determination at Exhibit 2 and 3 at 16, ¶ 9.6). Because Plaintiff failed to provide the requested documents he could not establish a loss of earnings due to a prior injury or sickness. *Id.* at 19.

Additionally, Defendant, rationally, denied benefits to Plaintiff based upon the findings of its medical consultant who reviewed the findings of Plaintiff's physician. *Id.* at 17 *citing* (Admin. Rec. at 236–7). Plaintiff's physician provides evidence that Plaintiff could return to work without any restrictions or limitations. *Id.* at 17 *citing* (Admin. Rec. at 447).

Because Plaintiff failed to produce documentation that Defendant requested to review his claim, and Defendant had rational grounds upon which it could conclude that Plaintiff could return to work full time without restriction, I hold that Defendant's denial of Recovery Benefits to Plaintiff was not arbitrary or capricious.

## III. CONCLUSION

I GRANT Defendant's motion to affirm the ERISA benefits determination. Addi-

tionally, I DENY Plaintiff's motion to declare void the claims representative's denial and to order reinstatement of benefits.

**IT IS SO ORDERED.**