**Charles LAMBERT, Plaintiff,**

v.

**CWC CASTINGS DIVISION OF TEXTRON, INC., and Unum Provident Corporation, Defendants.**

No. 1:01–CV–783.

United States District Court,
W.D. Michigan,
Southern Division.

March 14, 2003.

Timothy J. Bott, Bott & Spencer, P.C., Muskegon, MI, for plaintiff.

K. Scott Hamilton, Dickinson Wright, Detroit, MI, for defendant.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This is an action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1), for recovery of benefits wrongfully denied. Plaintiff challenges defendants' termination of his long term disability benefits. The matter is submitted to the Court for review of the plan administrator's decision based on the administrative record and the parties' briefs. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618–20 (6th Cir.1998). Having duly considered the record, the parties' briefs, and oral arguments of counsel, the Court concludes the termination of benefits was in error and will award judgment to plaintiff.[1]

### I

Plaintiff Charles Lambert is presently 57 years old. He had been employed by defendant CWC Castings Division of Textron, Inc., in Muskegon, for over 20 years when he ceased working in October 1996 due to symptoms of balance disorder and dizziness. The symptoms were caused by Meniere's disease, an inner ear condition. Plaintiff applied for and was granted long term disability benefits by Paul Revere Life Insurance Company, the plan administrator of the governing employee benefit plan.

Defendant Unum Provident Corporation ("Unum") subsequently succeeded Paul Revere as plan administrator and on February 7, 2000, terminated plaintiff's benefits. The decision was based on review of medical records from plaintiff's treating physician, Paul E. Lomeo, D.O., indicating that plaintiff's condition had improved. Specifically, defendant Unum relied on Dr. Lomeo's September 14, 1999 office note stating, "He's doing great. His ears are good. We released him to drive." Administrative Record ("A.R.") p. 112. Plaintiff

---

1. The Court notes that plaintiff's complaint also includes, in count II, a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2). The claim is not even mentioned in the parties' briefs. Nor was it addressed in oral argument. The claim is deemed withdrawn based on plaintiff's failure to prosecute it. Moreover, the claim is clearly subject to dismissal pursuant to *Wilkins*, 150 F.3d at 615 (holding that the availability of a remedy under 29 U.S.C. § 1132(a)(1), through a claim for recovery of benefits wrongfully denied, precludes resort to any other remedy under § 1132). Accordingly, plaintiff's count II claim will be summarily dismissed.

appealed this decision, submitting clarifying statements by Dr. Lomeo confirming his opinion that plaintiff, notwithstanding recent improvement, remained totally and permanently disabled due to intermittent spells of vertigo, disequilibrium and lightheadedness. A.R. pp. 126, 145–51. Nonetheless, Unum affirmed its termination of benefits in a final decision dated September 21, 2000. *Id.,* pp. 197–98. Unum concluded that plaintiff had failed to demonstrate that he did not retain the ability to perform sedentary work.

## II

■ The parties essentially agree that the governing plan confers discretionary authority upon the plan administrator and that, therefore, Unum's decision must be upheld unless it is shown to be arbitrary or capricious. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Darland v. Fortis Benefits Ins. Co.,* 317 F.3d 516, 527 (6th Cir.2003). Under this deferential "arbitrary and capricious" standard of review, the plan administrator's decision will be upheld if it is rational in light of the plan's provisions. *Darland,* 317 F.3d at 527. "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.,* quoting *Davis v. Kentucky Finance Cos. Ret. Plan,* 887 F.2d 689, 693 (6th Cir.1989).

Plaintiff contends that Unum's judgment may have been influenced by a conflict of interest, inasmuch as Unum both determines eligibility for benefits and is responsible for paying benefits. Because of this apparent conflict of interest, plaintiff contends Unum's decision should be subjected to closer scrutiny. Indeed, while such a conflict does not alter the governing standard of review, it is to be considered as a factor in determining whether the decision was arbitrary or capricious. *Darland,* 317 F.3d at 527–28.

## III

■ Plaintiff insists that the decision to terminate his disability benefits was arbitrary and capricious. Where termination was precipitated by an ambiguity in his treating physician's office notes; and the ambiguity was subsequently clarified, definitely and unequivocally, through an opinion of continuing total disability by the same physician; and no medical evidence directly refuting the treating physician's opinion was obtained, plaintiff maintains the plan administrator's decision is without reasoned explanation.

Unum contends its termination decision is not premised exclusively on Dr. Lomeo's September 14, 1999 office notes. Unum cites the September 7, 2000 clinical review assessment of plaintiff's medical records by its medical consultant, Nancy B. Beecher, M.D. A.R. pp. 180–81. She concluded that the medical records did not include sufficient objective findings to support plaintiff's claim that he was disabled even from sedentary and light work.

Further, Unum points to the transferable skills analysis conducted by its vocational expert, Keri Elwell, of Genex Services. A.R. pp. 191–93. The analysis identifies potential employment options, *assuming* plaintiff is capable of performing sedentary or light work. Ms. Elwell concluded that among the hundreds of potential sedentary and light work options identified, "some of these job options should be appropriate for the claimant and appear to exist in reasonable numbers in this area." *Id.* at 192.

Finally, Unum relies on an answer given by plaintiff's other treating physician, Jack M. Kartush, M.D., on a form, "Attending Physician's Statement of Disability," provided to him by Paul Revere Life Insurance Company. A.R. pp. 95–96. Dr. Kartush had performed surgery (i.e., labyrinthectomy, or inner ear removal) on

plaintiff in December 1996. Dr. Kartush completed the form on March 24, 1997. In answer to question 7, he classified the severity of plaintiff's continuing physical impairment as "Class 4—Marked limitation. (60–70%)" *Id.* at 95. That is, Dr. Kartush did not choose to use the most serious classification, "Class 5—Severe limitation of functional capacity; incapable of minimal (sedentary) activity. (75–100%)." Defendant Unum contends this answer reflects Dr. Kartush's implied opinion that plaintiff is not completely incapable of sedentary activity.

The Court addresses these three items in reverse order. First, Unum's characterization of Dr. Kartush's opinion is plainly inaccurate, even disingenuous. In the same March 24, 1997 physician's statement relied on by Unum, Dr. Kartush answered question 9 by clearly stating that plaintiff was "totally disabled," both from his prior work and from "any other work." A.R. p. 95. In answer to question 10, Dr. Kartush stated that plaintiff was not a suitable candidate for trial employment either in his prior work or any other work. He offered this further explanation: "Due to the nature of this condition it would be unsafe for patient to perform work of any kind." *Id.* Hence, to the extent Dr. Kartush's answer to question 7, viewed in isolation, may arguably support the inference that Dr. Kartush did not believe plaintiff was totally disabled, any such inference is clearly and unequivocally refuted by his subsequent answers. Unum's contrary reading of Dr. Kartush's opinion is simply not rational. Rather, it is arbitrary and capricious.

Second, the transferable skills analysis represents no evidence of plaintiff's physical condition. The vocational expert's assessment of employment options within plaintiff's physical limitations is entirely dependent on acceptance of Dr. Beecher's opinion that plaintiff could perform sedentary or light work, and rejection of Dr. Lomeo's opinion that he could not. The transferable skills analysis only has significance to the extent Dr. Beecher's opinion is reliable.

Dr. Beecher has never met or examined plaintiff. She was hired by Unum to review plaintiff's medical records and comment on the sufficiency of "objective findings" contained in the records. Dr. Beecher's opinion on the impact of plaintiff's continuing experience of vertigo, disequilibrium and occasional dizziness on his functional capabilities is, therefore, of commensurately limited value. She was able to comment only on the objective findings.

Yet, as explained by Dr. Lomeo in his sworn statement on June 20, 2000, vertigo, by its very nature, defies objective or empirical measurement:

> Well, as I was saying earlier, vertigo, you know, is rotation—a spinning sensation.
>
> .    .    .    .    .
>
> He will have ongoing vertigo for the rest of his life. If he has one good day, he will have a few bad days. He may have a few hours during the day, at most, where he may not experience vertigo, but the majority of the day, he will always have some sort of disequilibrium, for which he needs that cane or he will fall.
>
> .    .    .    .    .
>
> But any time anyone has some type of vertigo going on, they are a little confused, because their whole world is going around for minutes, seconds or hours, and they cannot function. Vertigo is a hard thing. You do not see it. It's not like someone comes in with a cut on their arm, a broken leg. They don't

come in with pain. They are on a merry-go-round inside.

A.R. pp. 148–49.

That plaintiff's medical records may contain relatively little in terms of objective findings is not, therefore, surprising, or telling. It follows that Dr. Beecher's mere observation of this fact is entitled to little weight, in assessing plaintiff's actual functional capabilities, in comparison with the clear opinions of two treating physicians that plaintiff is totally disabled. Hence, Unum's reliance on Dr. Beecher's opinion to justify termination of benefits is simply not reasonable.

■ In *Darland,* the Sixth Circuit recently adopted the "treating physician rule" in the context of disputes over entitlement to ERISA disability insurance benefits. 317 F.3d at 531–33. The treating physician rule requires the Court "to defer to the opinions of a claimant's treating physicians unless there is substantial evidence contradicting them." *Id.* at 532. Applying this standard, it is clear that Unum's determination, contrary to plaintiff's treating physicians' opinions, is not supported by substantial evidence and cannot be upheld.

Dr. Lomeo's ambiguous September 14, 1999, office notes have been subsequently clarified and explained by Dr. Lomeo. The inference drawn by Unum from Dr. Kartush's answer to question 7 has been exposed as patently unsupported. The value of the transferable skills analysis is dependent on the reliability of Dr. Beecher's opinion, which has been shown to be entitled to little weight. Weighed against the consistent opinions of plaintiff's two long term treating physicians, whose opinions are further corroborated by the Social Security Administration's determination that plaintiff has been totally disabled since April 1, 1997, it is clear that Unum's contrary evidence can only be characterized as insubstantial.

Noteworthy is the following reasoning from *Darland,* which is directly applicable in this case as well:

> The treating physician rule has particular applicability to the factual circumstances of this case where there is such a stark dichotomy between the opinions of the treating physicians who possessed an abundance of first-hand knowledge of the patient's medical condition and those of the non-treating medical consultants who were hired by a company selected by Fortis, the plan administrator, which had a financial stake in the matter as the insurer who ultimately pays the benefits. Although we do not dispute the concurrence's assertion that the treating physician's opinion does not "trump" all other evidence, we do maintain that the treating physician's opinion is entitled to deference particularly when, as in the matter at hand, there is an absence of substantial evidence to the contrary.

317 F.3d at 533. The *Darland* court went on to reverse the plan administrator's denial of long term disability benefits as arbitrary and capricious. *See also, Hoover v. Provident Life & Accident Ins. Co.,* 290 F.3d 801, 809 (6th Cir.2002) (holding that record evidence did not support denial of benefits when only the defendant plan's physicians, who had not examined the plaintiff, disagreed with the treating physicians).

Employing the same reasoning in this case, the Court holds that Unum's decision to terminate plaintiff's disability benefits is not supported by substantial evidence, is arbitrary and capricious, and must be reversed.

## IV

Plaintiff is therefore entitled to reinstatement of long term disability benefits and to award of all benefits past due. A

judgment order consistent with this opinion shall issue forthwith.

## PARTIAL JUDGMENT ORDER

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that plaintiff's count II claim under 29 U.S.C. § 1132(a)(2) for breach of fiduciary duty is **DISMISSED**; and

**IT IS FURTHER ORDERED** that plaintiff Charles Lambert is hereby **AWARDED JUDGMENT** in his favor on his count I claim under 29 U.S.C. § 1132(a)(1) for recovery of benefits wrongfully denied; and

**IT IS FURTHER ORDERED** that plaintiff is **ADJUDGED** entitled to reinstatement of long term disability benefits under the governing ERISA plan and award of past due benefits, since they were wrongfully terminated on February 7, 2000; and

**IT IS FURTHER ORDERED** that plaintiff shall file his motion, if any, for attorney's fees, interest and costs under 29 U.S.C. § 1132(g)(1) not later than April 4, 2003 and defendants shall file their response not later than April 18, 2003, whereupon the Court shall adjudicate the motion and enter final judgment without need of further hearing.