NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0351n.06
Filed: May 17, 2006

No. 05-1590

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TERRY M. REZNICK, D.O., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| PROVIDENT LIFE AND ACCIDENT | ) | STATES DISTRICT COURT FOR |
| INSURANCE COMPANY, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellee. | ) | |

Before: SILER, BATCHELDER, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**. Plaintiff-appellant Terry M. Reznick appeals

from the district court's grant of summary judgment for defendant Provident Life & Accident

Insurance Company as to whether Reznick is disabled within the meaning of his disability insurance

contract. The district court held that Reznick is not receiving appropriate care for bipolar disorder

as required by the contract. For the following reasons, we affirm the district court's judgment.

I.

Reznick, a board-certified osteopathic family practitioner, purchased a disability insurance

policy ("the policy") from Provident in 1992. The policy provided that Reznick would receive

monthly payments should he become totally disabled. The policy imposed the following conditions

for coverage:

1

Total disability or totally disabled means that due to Injuries or Sickness:
> 1. You [Reznick] are not able to perform the substantial and material duties of your occupation; and
> 2. You are receiving care by a Physician which is appropriate for the condition causing the disability. We [Provident] will waive this requirements [*sic*] when continued care would be of no benefit to you.

Your occupation means the occupation . . . in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

Reznick claims that he became disabled in 1997 when he was afflicted with bipolar disorder. Provident initially approved his disability claim and began paying benefits. Provident soon determined, however, that Reznick was not disabled and ceased paying disability benefits. Reznick filed suit, and in September 2001 the parties settled his claim for benefits accruing between 1997 and 2001. Reznick filed a supplementary claim for benefits under the policy, which Provident denied. Reznick filed the current suit in Michigan Circuit Court for Genesee County on September 22, 2001, alleging that he is entitled to benefits on an ongoing basis because he remains totally disabled within the meaning of the policy. Provident removed the action to the United States Court for the Eastern District of Michigan.

During the bench trial, the court heard extensive testimony from Reznick, Reznick's brother, and medical experts for both Reznick and Provident. Reznick testified that he had not worked since 1997 due to bipolar disorder. On cross-examination, however, Provident impeached Reznick, who admitted making many false statements about his employment in a variety of contexts. Reznick admitted that he lied about his work under oath on his Arizona licensing application, that he claimed a tax deduction for working out of his home despite telling Provident that he was not doing so, that he made contradictory statements to Provident and his doctors about whether he was engaged in family practice or rounding in hospitals, that he lied about his practice while giving expert

2

testimony, and that he made inaccurate statements regarding his employment on his curriculum vitae. Reznick's brother corroborated these disclosures, testifying that the plaintiff is "very erratic, very unreliable, very untruthful."

In addition to Reznick's testimony, the court also considered the testimony of Dr. Kevin Hess, Reznick's treating physician, and Dr. Peter Brown, Provident's expert who reviewed Reznick's file. Dr. Hess testified that he initially treated Reznick in 2000, diagnosed him with bipolar disorder, and prescribed Depakote, a mood stabilizer. Dr. Hess noted that noncompliance, or failure to follow a recommended treatment plan, is "almost inherent" in a bipolar disorder diagnosis and that Reznick was no exception to this trend. Reznick failed to take his medication and failed to follow up with Hess as often as Hess desired. Dr. Hess cited Reznick's noncompliance, the inherent recurrence of his manic and depressive episodes, the stress of Reznick's occupation, and the risk to his patients as reasons why Reznick was not capable of returning to work. Hess indicated, however, that he was not concerned about Reznick's work at Oakland Allergy Clinic, because Reznick described the work as "easy" and because Reznick's description of that work implied that the risk to patients was minimal. On cross-examination, Dr. Hess acknowledged that he took all of Reznick's statements "at face value" and did not independently corroborate them. He also acknowledged that Reznick had never disclosed his work other than at the allergy clinic and that such disclosure would have been clinically important. Finally, Hess acknowledged that inaccuracy as to clinically important information could undermine the validity of his medical conclusions.

Reznick saw Dr. Hess five times between December 2002 and January 2004, and each session lasted between 15 and 60 minutes. Dr. Hess described the content of the appointments:

A: Most visits, even though they are med management, my practice style is such that I impart therapy; I do therapy. . . . With Terry, it's not very regular. In other words,

3

it's not intensive weekly psychotherapy. That's not happening here.
Q: Why is that? Is that because you have told him he shouldn't be having that?
A: I think he has made a decision that that's not needed at this time.

Dr. Hess continued, describing that the "appropriate care" for Reznick's condition would include, at a minimum, compliance with medication and continued medication review, but more ideally including more intensive therapy. With respect to whether Reznick was receiving appropriate care, Dr. Hess agreed that Reznick had chosen not to accept appropriate care by refusing treatment. On redirect, however, Dr. Hess indicated, "It's appropriate, the care that I'm providing to him. It's not the ideal care, but many patients don't get ideal care."

Dr. Brown, Provident's expert, testified in person at trial after reviewing Reznick's case history, including several independent medical reports, Dr. Hess's file, and Reznick's deposition testimony. Noting that all of the medical evidence was congruent on most of Reznick's issues, Dr. Brown concluded that Reznick is capable of performing the duties of his profession because "not only were there no indications in any of the records of [] psychotic [or hypomanic] symptoms, but [] on every formal mental status it's explicitly noted that there are none present." Dr. Brown also noted that all of the clinical physicians agreed that Reznick's symptoms warranted more intense treatment. Despite this, Brown noted that Reznick's medication levels of Paxil and Depakote were appropriate only for a "mild disorder that's well stabilized by [the] medication." With respect to the Depakote prescription, Dr. Brown noted that "if we're talking about a disorder of disabling severity then [the medication level] is extremely problematic." The court summed up Dr. Brown's position thus, with Dr. Brown's agreement: "[I]f indeed he is as seriously hampered by a psychiatric disorder as he claims to be then the prescribed medication is insufficient, but . . . if he is not disabled [] to the extent that is claimed here then [] the medication is appropriate under those circumstances."

4

The court issued its findings of fact and conclusions of law on March 31, 2004. It initially found Reznick not to be credible, basing its finding on Reznick's "self-serving, contradictory testimony and exhibits submitted at trial." The court found both doctors credible, but found Dr. Hess's testimony to be limited in applicability because he did not independently verify any of Reznick's claims. For example, the court noted that Dr. Hess's opinion as to Reznick's ability to practice medicine is "'in large part dictated' by what Plaintiff reports that he is comfortable doing, and by how compliant Plaintiff is with treatment." For this reason, the court considered Dr. Hess's testimony to be "compromised" and instead credited Dr. Brown's view of Reznick's disability.

The court concluded as a matter of law that "[a]ppropriate care requires a relationship between the severity of the symptoms and the level of care that is received," and determined as a factual matter that Reznick either had a mild, non-disabling condition or that he was not receiving appropriate care for his condition. This conclusion was supported by the testimony of both doctors, who opined that more regular therapy would be appropriate therapy for an individual with total disability and that Reznick was not receiving regular therapy sessions at *his own* request – not that of Dr. Hess. In addition, the court noted that Reznick is medicated at a level consistent with only mild bipolar disorder and that Reznick's non-compliance was due only in part to his bipolar disorder. The court therefore found that Provident was justified in denying Reznick's claim for benefits because Reznick was not totally disabled within the policy definition. Reznick filed his timely notice of appeal on March 26, 2005.

## II.

We review the district court's legal conclusions de novo. *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999). District court findings of fact following a bench trial are reviewed for

5

clear error. Fed. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."). "When factual findings rest upon credibility determinations, this Court affords great deference to the findings of the district court." *Schroyer*, 197 F.3d at 1173.

Reznick asserts that the district court erred by creating a rule under which bipolar patients are completely excluded from coverage. In Reznick's words, "if someone who is bipolar is receiving appropriate care they cannot be disabled (and therefore are not covered [by the policy]) and, if someone is disabled by bipolar symptoms, they must not be receiving appropriate care (and are therefore not covered)." Appellant Br. at 23. This assertion misconstrues the effect of the district court's determination, both factually and legally. First, it is not impossible for a bipolar person to be disabled within the meaning of the policy under the district court's interpretation of the insurance contract. A victim of bipolar disorder could receive care consistent with disabling bipolar disorder – via a therapeutic dose of medication, for example – but still not be capable of performing the duties of her profession. Indeed, the district court's formulation of the relationship of appropriate care and disability merely rephrases the requirement that to be eligible for benefits under the policy, one must both be totally disabled and receiving care that is appropriate for a person *who is totally disabled*. This interpretation of the contract is correct and does not effect a forfeiture of Reznick's insurance benefits as a matter of law.

We similarly find no clear error in the district court's application of its contractual interpretation as a factual matter. The record reflects that Reznick's care is appropriate only for a person who is not totally disabled, since he was receiving a non-therapeutic dose of medication and

little therapy. In addition, there is extensive evidence showing that Reznick continues to perform the duties of his profession while concealing that fact from both his treating physician and the insurance provider. Given these facts, we cannot say that the district court clearly erred in concluding that Reznick is either capable of performing those duties (and is therefore not totally disabled) or is receiving inadequate care for a disabling illness. As a result, the district court did not err in concluding that Reznick is not owed disability benefits under the insurance contract.

Reznick correctly views the testimony by Dr. Brown as damaging to his claim and challenges that testimony by analogy to ERISA cases holding that the testimony of non-treating physicians (such as Dr. Brown) should be given less weight than treating physicians (such as Dr. Hess) because experts employed by insurance companies operate subject to an inherent conflict of interest and have not had the opportunity to examine the patient directly. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) ("[W]e must take into consideration the fact that Liberty is acting under a potential conflict of interest because it is both the decision-maker, determining which claims are covered, and also the payor of those claims."); *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002) (upholding award of disability benefits where insurance company's non-treating physician merely disagreed with the treating physician).

We decline to accept Reznick's proffered presumption because appeals from bench trials are not analogous to ERISA appeals. ERISA cases are appeals from agency determinations rather than trials on the merits, and thus come before the court in a different procedural posture and with a different standard of review than those before us here. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) ("[A] district court should not adjudicate an ERISA action as if it were conducting a standard bench trial under Rule 52."). Further, even in ERISA cases, conflicts

of interest do not change the standard of review. *Calvert*, 409 F.3d at 293 ("[T]he standard [of review] remains unchanged and the conflict of interest is to be considered in *applying* that standard." (emphasis in original)). As in the ERISA context, fact-finders at trial may consider possible conflicts when assessing the credibility of expert testimony. That consideration, however, need not be explicit and does not alter the standard of review, so we will uphold the fact-finder's credibility absent clear error. *Schroyer*, 197 F.3d at 1173.[1]

The district court here made no explicit findings as to Dr. Brown's conflicts of interests, but this is not clear error requiring reversal. The district court was not required to do so as a matter of law, nor is there any factual basis for mandating its consideration in this particular case. Unlike cases where the court credited the testimony of a non-treating physician who merely disagreed with the treating physician, the court here carefully explained its reasoning for crediting Dr. Brown's testimony over that of Dr. Hess and reasonably based its determination on the evidence adduced at trial. As explained above, the district court noted that Dr. Hess's opinion was problematic because it relied solely on the assertions of a highly incredible witness. Dr. Hess acknowledged that he was ignorant of the true nature and extent of Reznick's employment and that such lack of knowledge on a clinically-important subject could weaken his diagnosis. Dr. Brown, by contrast, had extensive

---

[1] Even if we were to find *Calvert* and *Hoover* persuasive, Reznick would still not prevail. The Supreme Court has expressly held that courts reviewing ERISA appeals should not automatically assume that a physician's testimony is subject to a conflict of interest. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."). In so holding, the Supreme Court noted that "the assumption that the opinions of a treating physician warrant greater credit than the opinions of plan consultants may make scant sense" because treating physicians may have a countervailing incentive to find patients disabled. *Id.* at 832.

8

information from several doctors and from other sources that he could use to verify his diagnosis. Given this evidence, the district court's determinations that Dr. Brown had sufficient information to form an informed opinion and that Dr. Hess's opinion was "compromised" were not clear error, nor was its resultant decision to accept Dr. Brown's testimony regarding the appropriateness of Reznick's care and the seriousness of his condition.

III.

For the foregoing reasons, we affirm the district court's judgment.